No. 14,323.

THE POLICE JURY OF THE PARISH OF AVOYELLES VS. THE CORPORATION
OF MANSURA.

SYLLABUS.

1. A resolution of a police jury, authorizing its president to employ counsel
   to enjoin a municipal corporation from selling intoxicating liquors during
   the year 1902, is held to be sufficient authority, without further action by
   the jury, for the president to institute suit and stand in judgment therein.
2. If the people of a parish, by ballot, may vote liquor selling out of the
   parish, so that the prohibition is binding for twelve months on all the
   wards and cities and towns within the parish (and that is the law), such
   a vote taken throughout the parish every twelve months would continue
   prohibition in and throughout the parish indefinitely.
3. It is only where a parish fails to act in the way of repetition of the edict
   of prohibition, within twelve months of its former election, or of the
   beginning of the prohibitive period, that a town or city can take action
   to emancipate itself from the restraint put upon it by the parochial election.
4. Once a parish speaks for prohibition, its voice is paramount throughout its
   limits, binding on all, citizens and municipalities alike, and continues so
   for twelve months, and, if at or near the close of the twelve months, it
   speaks again for prohibition, it silences any contrary voice which, mean
   while, may have been spoken in towns or cities within its limits.

APPEAL from the Fourteenth Judicial District, Parish of Avoyelles
—Couvillon, J.

Joseph Clifton Cappel and E. J. Joffiron, for Plaintiff, Appellee.

Adolph Vallery Coco, for Defendant, Appellant.

The opinion of the court was delivered by

BLANCHARD, J. In the year 1900 the Police Jury of the Parish of
Avoyelles, acting under authority of Act No. 76 of 1884, submitted to
the electors of the parish, at an election held for the purpose, the
question of the sale, or prohibition of the sale, of intoxicating liquors
in said parish.

Theretofore the sale of such liquors had been carried on in the
parish.

The election ordinance provided that if the people voted against the
continuance of their sale, the prohibition should begin from and after
January 1st, 1901.

At the election which ensued, prohibition carried, and beginning with January 1st, 1901, licenses for drinking houses and shops were withheld.

In the autumn of 1901, action was taken by the authorities of Mansura, an incorporated village in the Parish of Avoyelles, to submit to the voters of that municipality the question of granting a municipal license to sell liquors within the corporation limits beginning January 1st, 1902. At the election held for the purpose twenty votes were cast out of a total of 35 registered voters in the town. All of the twenty were for authorizing the sale of liquor.

Subsequently, to-wit:—in December 1901, and before twelve months of prohibition, resulting from the previous parochial election, had expired, the Police Jury of the Parish again submitted, by proper ordinance, to the voters of the parish the question of continuance of prohibition *vel non* in the parish from and after January 1st, 1902.

At this election 817 votes in favor of prohibition were cast, and 240 against prohibition. Thereupon due proclamation was made of the result, viz:—that the people of the parish had legally decided to prohibit the sale of intoxicating liquors throughout the parish from and after January 1st, 1902.

Apprehending that, notwithstanding this second vote of the parish, the authorities of Mansura would issue licenses for the sale of liquors in that town for the year 1902, predicating their action in this regard on the election heretofore referred to as having been held in the town, the Police Jury, following the announcement of the result of the second parochial election, passed this resolution:—

Resolved that the President be and he is hereby authorized to employ counsel to enjoin the different corporations of the Parish from selling intoxicating liquors during the year 1902.

Whereupon the President of the Jury brought the present action against the town of Mansura to prohibit, by injunction, its officials from issuing licenses for the sale of liquor in the town for and during the year 1902.

Brushing aside as of no consequence certain minor matters that arose in the case, the real defense to the suit is found to be (1) want of authority in A. B. Irion, President of the Police Jury, to institute and prosecute the suit, or to stand in judgment for the Police Jury; (2) the election held in the town of Mansura in the fall of 1901, at

which the sale of spirituous liquors was authorized in the town, was entitled to have full effect as against the parish for twelve months from the time from which such sale was authorized, to-wit:—January 1st, 1902.

The case was tried by jury, who returned a verdict in favor of the plaintiff, and from the judgment predicated thereon, defendant prosecutes this appeal.

I.

The resolution adopted by the Police Jury is sufficient authority for its President to institute this suit and stand in judgment therein for the parish.

It might have been fuller and more explicit, but its meaning is clear enough. It is not expected that an ordinance of a Police Jury will be drawn with that degree of preciseness and skill which characterizes acts adopted by higher legislative bodies.

This resolution authorized the President of the Jury to employ counsel for a specific purpose, to-wit:—to enjoin the incorporated towns in the parish from authorizing the sale of liquors in the year 1902.

This grant, then, by direct terms empowered the President to employ counsel to enjoin the towns from permitting liquors to be sold, and there followed from it, by necessary implication, the power to bring a suit, for only by suit, or process at law, could a writ of injunction be obtained.

The authority conferred to institute a suit involves and carries with it the power to stand in judgment in such suit. The proper party, under the law, in whose name a suit by a parish should be brought, when authority therefor is given by the Police Jury, is the President of the Jury, acting, as was the case here, for and on behalf of the jury.

But it is urged that, subsequent to the adoption of the resolution authorizing the President of the Jury to employ counsel to enjoin the towns, that official reported to the Jury he had engaged two lawyers who would undertake to represent the parish for a fee of four hundred dollars, and that a resolution offered by a member of the jury to appropriate that sum for the purpose was, on motion of another member, laid on the table.

The contention, in effect, is that this tabling of the proposition to appropriate money to fee the counsel employed, or proposed to be

employed, was tantamount to the withdrawal of the previous authority conferred to employ counsel.

We think not. The tabling of the resolution to appropriate four hundred dollars did not operate, under the general parliamentary law, the repeal of the preceding resolution authorizing the President to employ counsel.

Not only is repeal by implication not favored. but there was nothing in the action taken, refusing to appropriate the money, inconsistent, from a parliamentary standpoint, with the preceding resolution. It might have been that a majority of the Jury considered four hundred dollars too much for the service to be rendered·by the attorneys, or considered that the authority conferred upon the President to employ counsel carried with it the power to agree with them in the matter of their fees, or considered that it were better to wait and see what service would be rendered, what the result of the suit or suits would be, and then pay on a *quantum meruit.*

## II.

Under the second defense urged, the contention of the town of Mansura is, conceding that the parochial election held in 1900, establishing prohibition throughout the Parish beginning with January 1st, 1901, was binding upon the incorporated towns within the Parish, it was so binding for twelve months only, and that at the end of twelve months it was within the power of an incorporated town by a majority ballot of its voters to emancipate itself from the· effect of the election and thereafter to authorize the sale of intoxicating liquors, and this election by the town, thus emancipating itself from the edict of prohibition prononunced anteriorly by the Parish, must be respected by the latter for twelve months. That is to say, the Parish having spoken in favor of prohibition, its voice is binding on the towns for one year, but, meanwhile, if, towards the close of the year, a town, by an election held within its limits, declares for liquor selling in the town, the Parish is without authority thereafter, *for the term of twelve months,* to gainsay this.

The Act of 1884 (No. 76) gives to the police juries of the parishes and to the municipal authorities of the towns and cities of the State the exclusive power to make such rules and regulations for the sale or prohibition of the sale of intoxicating liquors as they may deem advis-

able, and to grant licenses to, or withhold licenses from, drinking houses and shops within their limits, as a majority of the legal voters of any such parish, city or town may determine by ballot. The same authority, too, is extended to wards of a parish. The police jury of a parish may authorize a ward election to be held to take the sense of its voters on the question of prohibition *vel non*.

The act further directs that the election for which it makes provision shall be taken whenever deemed necessary by a police jury, or by the authorities of a town or city, "provided," says the act, "that said election shall not be held more than once a year."

Then follows a second *proviso* which is interpreted to mean (1) that whenever the majority of the votes cast in a ward, if only a ward election is held, shall be against granting licenses for the sale of liquors, said vote or decision is to govern and control throughout the ward, including within its grasp incorporated towns and cities situated within the limits of the ward; (2) that whenever the majority of the votes cast in a parish, if an election throughout the parish is held, shall be against granting licenses, said vote or decision is to govern and control throughout the parish, including within its grasp all the wards and incorporated cities and towns within the limits of the parish. And this shall be the case, concludes the act, (meaning the binding of the cities and towns), "as fully and completely as if said election had been held by authority of the towns or cities themselves."

The clear intention of the statute is that local option is conferred, first, upon those political subdivisions of the State called "parishes"; next, upon the subdivisions of a parish called "wards"; and, lastly, upon incorporated cities and towns within the parish or wards.

If the parish speaks as a whole in favor of prohibition, by means of an election held throughout its limits, its voice binds all the lesser political subdivisions, to-wit: the wards and municipalities, with this limitation, that twelve months after the parish shall have established prohibition a town or city, acting pursuant to ordinance adopted by its governing body, or a ward, acting pursuant to ordinance of the police jury calling an election for such ward, may vote to authorize liquor selling within its limits.

If a parish, as a whole, does not take action to establish prohibition, and a ward of the parish wishes to do so, the police jury may authorize such ward to hold an election, and if the vote be in favor of prohibition it binds the cities and towns within the limits of the ward, with the

limitation that twelve months after the ward shall thus have established prohibition, a town or city within its limits may vote to authorize liquor selling in the municipalty.

If neither the parish as a whole, nor a ward as a whole, within which is an incorporated town, takes action to establish prohibition, such town, acting through its own officials, may hold an election, and if the vote be in favor of prohibition it holds good, in so far as the town authority extends, until the people of the town' vote differently at an election, which is not to be held before twelve months, from the first election, expire.

No parish, nor ward, nor city, nor town, acting by way of an election on such matter, can hold a second election within the year of the first. Such is the meaning of the first *proviso* of the act which reads: "that said election shall not be held more than once a year."

If the people of a parish, by ballot, may vote liquor selling out of the parish, so that, as we have seen, the prohibition is binding for twelve months on all the wards and towns and cities within the parish, such a vote taken throughout the parish every twelve months would continue prohibition in and throughout the parish indefinitely.

It is only where a parish fails to act, in the way of repetition of the edict of prohibition, within twelve months of its former election, or of the beginning of the prohibition period, that a town or city can take action to emancipate itself from the restraint put upon it by the parchial election.

Once a parish speaks for prohibition its voice is paramount throughout its limits, binding on all, citizens and municipalities alike, and continues so for twelve months, and if at or near the close of the twelve months it speaks again for prohibition, it silences any contrary voice which, meanwhile, may have been spoken in towns or cities within its limits.

When prohibition is once established by vote in a parish, it continues until the people of the parish see fit to change it through the same means by which it was established, to-wit: by ballot, with the exception noted, viz.: that a ward, or an incorporated town or city within its limits may, by election held after twelve months, change it as to. itself.

Practically, therefore, in order to maintain prohibition throughout a parish as an entirety, supposing the sentiment of the people to be that way, it is necessary for the police jury to submit the question to an election every twelve months.

And if the question be so submitted and prohibition be voted, it heads off or bars action by the towns looking to their emancipation therefrom.

That is the present case. Avoyelles Parish, in 1900, voted prohibition, to begin January 1st, 1901. Towards the end of 1901, it voted prohibition again, to begin January 1st, 1902. When it uttered its voice at this second election, it silenced and nullified the voice of the town of Mansura which had spoken in November, 1901, for liquor selling in that town beginning January 1st, 1902.

There is no warrant to be found in the law, nor any decision of this court, for the contention that when a town—a part of a parish—declares by ballot for the sale of intoxicating liquors, such action is binding on the parish as a whole for twelve months from the date of the town election.

The decisions relied on by defendant as sustaining this view, to-wit: Citizens and Tax-payers vs. Board of Supervisors, 49 La. Ann. 641; Police Jury vs. Mansfield, *Ib.*, 797; State vs. Jackson, 105 La. 438; and Police Jury vs. Descant, Mayor, *Ib.*, 512, do not do so. In none of those cases was the question here presented involved, and it is not considered that the views herein advanced are, in any way, in conflict with those there expressed.

The law, which declares that when a "majority of the votes cast in a parish, if an election has been held for the whole parish, shall be against granting licenses for the sale of intoxicating liquors, said vote or decision shall govern and control the action of any ward, incorporated town or city within the limits of said parish, as fully and completely as if said election had been held by authority of said town or city," fully sustains the pretensions of the plaintiff and the judgment appealed from, so holding, is affirmed.

BREAUX and MONROE, JJ., dissent.